Good morning, your honors. May it please the court. My name is Quinn Denver. I represent Mr. McKenzie. I would like to reserve two minutes. The question before the court is whether the trial court and the prosecutor raising before the jury the possibility that if Mr. McKenzie were convicted, he would receive lenient treatment rendered the trial fundamentally unfair and denied him due process. Now, there were two trials in this case. In the first trial, there's a day of testimony. The jury went out. They asked for a rereading of three witnesses. They asked some legal questions. They deliberated for two days. They acquitted him on the burglary charge, and they were split nine to three for acquittal on the petty theft charge. The second trial was quite different. The same witnesses. This time, the jury went out. They didn't ask for any rereading, no legal questions. And in two hours, they brought back unanimous convictions of petty theft and a new charge of receiving stolen property. So what explains this startling difference? I think the difference is explained by what happened during the voir dire. And that's where the first the district attorney raised before the jury the possibility that if they convicted Mr. McKenzie, that he would merely get a misdemeanor. She said the judge can even make a case of misdemeanor after trial. He has that power. She then said the judge can do anything he wants to say. This wasn't like that bad a crime. I'll make it a misdemeanor instead of a felony. He can do that. Mr. Denver, the – what bothers me here is that it was the defense lawyer who first broached the punishment question by bringing up the three strikes issue. And once that happened, I mean, once the question of what was the possible punishment was raised, why was it raisable only in one direction? In other words, why was it okay to say that he might get a very big sentence but not okay to say he might get a very small sentence? Is it because it's not accurate? Well, first of all, is what accurate? Let me address two things. First of all, what happened was the district attorney wanted to bring in his supposed statement that he intended to steal and wanted to bring also the fact that he said, I'd be willing to set up some deals for you. And in other words, I'll set up some drug deals, you know, if you'll help me out. They wanted to bring that in. The defense said we want to keep that out, but if you do bring it in, then he ought to be able to say that the reason that he was willing to do that was he was so afraid of the possibility of being charged and getting three strikes treatment. The judge said, okay, that seems fair. If the district attorney wants to bring it in, then he ought to be able to explain why he made that statement, even though he was innocent. And the judge said, and you can voir dire on that. Now, all the defense counsel said was, does the fact that this is a three-strike case cause you any problems, or what are your feelings about that? Never talked about what the penalty was for three strikes. It was the prosecutor who brought it up, and then it was the judge who brought it back in again by saying, yes, went through the thing. He had the sole duty of exercising discretion to decide what sentence, if any, to impose. It could be probationary. It could be a misdemeanor. It could be a straight probation and allow him to go through some kind of probationary program. Now, the thing is, they also told the jury that you're not to consider punishment. But what is a juror supposed to think when you're told by both the prosecutor and the court all these things about the punishment? Counsel, it seems to me the problem is that most Californians, I think you can almost assume, knows what three strikes is or at least know generally. It was so widely publicized. So the attorney for the defendant brings it up. Now, a judge could consider that the attorney doing that was trying to poison the voir dire, so they'd worry about three strikes, and the judge didn't want it in the case at all. If that's true, instead of dismissing all the jurors, the judge can try and make it safe. He may not care much for how he did it. But isn't that the scenario that is logical? Well, first of all, I don't know how much people know about the exact contours of three strikes law. Yeah. Beginning. But the judge allowed questions about that. The questions never talked about the punishment. The judge said, that's fair. If we're going to have three strikes come into this case, you ought to be able to ask some question, because the big problem on three strikes is the idea that, oh, this fellow has two strikes. He must be guilty of the third strike. All this defense counsel asked was, how do you feel about that? Trying to get some reading of it. Never talked about the penalty. It was the prosecutor who brought it in. It was the trial court that brought it in after that. After that, when they were trying to cure it. But if you just take at the very beginning of the work with the jury, and the attorney says, how do you feel about the three strikes law? With no mention of penalty. There's nothing to cure, Your Honor. That was authorized by the trial court. Said you can voir dire on that. Ask the blandest question you could ask about three strikes, which was, how do you feel about it? Didn't say, how do you feel about the punishment? Do you think that you're going to think? When did he say that? No, did not say anything of that. Her only question was, this is going to be, you're going to finance a three strikes case. What do you think about it? Wanted to know what the person was saying. When did the judge say it's OK to do this? At the very time when they made the ruling that they could bring in the fact of his willing to cooperate. Before or after the picking of the jury? Oh, before. This is an eliminate before this. In other words, when that defense counsel went in, she was told by the judge, you can voir dire on three strikes. And she asked the blandest question you could ask about that. How do you feel about that? You're going to answer being like, well, three strikes. The guy must have done it. I mean, he's got two strikes. That was the worry. That's what one of the jurors said. So she asked the bland question. The prosecutor then came in and said, let's talk about misdemeanors. I think it would be misdemeanors. He kept saying to the jury, you understand that? This could be a misdemeanor. He said twice. Do you understand that? Do you understand that? And the judge came in and held out that whole possibility. That did not happen. Is the error the reference to the misdemeanor or is the error the judge's reference to the possibility of probation? Well, he also mentioned misdemeanors. Right. I understand. He mentions probation, misdemeanor and felony. Are all three, are two of those, two of the three, incorrect? Your Honor, I don't think it's a question if it's incorrect. The cases say you can't bring up the possibility of lenient treatment. Now, but let me address that. The district, the Deputy Attorney General claims that this was technically accurate. In fact, to get to probation, the judge would have to find that either a three-strike sentence or a two-strike sentence would be outside the spirit of the three-strike law and that the defendant should be sentenced without regard to his prior convictions. The jury would have heard defense counsel, Ms. Sharp, saying, Your Honor, that's incorrect. In a three-strikes case, you cannot get probation. There's nothing to contradict her statement after that because the court actually conducts a sidebar and then comes back and says, ladies and gentlemen, you are not to consider punishment in this case. I will determine what the law requires. Well, after being told all these things by the prosecutor, it isn't the inaccuracy, Your Honor. It's raising the subject. You're not – the other cases are not based on the fact that the jury was misled. They're not even supposed to hear about this. Well, what cases are you talking about? You're talking about the case where they said we want to have guilty with extreme mercy, and that seems fairly far afield. What else? Well, there's every case, Your Honor, and I've cited them, every case that's dealt with the raising of punishment before the jury that we've cited, and particularly when there's suggestion of lenient treatment, which makes the jury think, well, you know, let's resolve our doubts here because the judge will take care of it, has said that this is highly prejudicial. Rogers v. United States, they said it was so fraught with prejudice that the court itself raised the issue and reversed. This Court in the Ninth Circuit in Ewald said it was fundamentally and prejudicial. Well, before – we haven't – we've sort of skidded around. Was the judge right that he can reduce a wobbler to a misdemeanor? Theoretically possible. Theoretically. It's the law in California that the wobbler, you can, may it reduce the misdemeanor. It's also the law in California you can give probation. It's possible. He was stating – yes, he was stating what the law is. But, Your Honor, what I'm saying is it isn't the inaccuracy. It's even raising the subject. Okay, I understand that, but there seemed to be some confusion as to whether or not the judge was right. The judge was right on the law. It's a question of whether he should have been there. But the issue that your adversary is going to say is you brought it up first, meaning you're the attorney who is then representing them, that you brought it up first. Your issue is that this was because of discussions before the trial started, that this was fair voir dire, and the attorney representing the defendant had a right to do this because of the statements made by the judge. Now, where do we find in the record that colloquy where the judge says it's very fine to bring up about three strikes in your voir dire? Give me one moment, Your Honor. You're right. It is technically possible that it could have been probation or a misdemeanor. It's very unlikely. In fact, this judge sentenced him to 25 to life. It went up on appeal, and there was a reversal of the receiving stolen property. On resentencing, he sentences him to 27 to life. So it may have been technically possible, but it was very unlikely. Okay, Your Honor. I don't understand what you're saying. It's either legal or not legal. It's technically possible. The rest is up to the judge. It's not technically. It's possible. It's at the judge's discretion. Okay, Your Honor. The cite is to the reporter's transcript for the 3rd of June, 2003, in pages 19 to 20. I will find it is relevant, then, to address this in voir dire since the jury will be hearing evidence that the defendant was motivated to try to make an agreement with law enforcement to avoid the consequences of three strikes, and it is relevant to voir dire the jury on that issue. That was a ruling prior to jury selection after the preliminary, and that was a ruling that the prosecutor knew about beforehand. Counsel, the trial court comes back after they have the sidebar. The trial court comes back and says, look, ladies and gentlemen, I'm going to determine what the sentence is. You are not to consider it. Now, that's to the whole panel. That's to the whole array of people who were selected. We haven't even started the trial yet. They then have the trial, and the trial judge gives instructions at the end of the trial. Are there any errors in those instructions? No, there's no errors in any of those. And did he give the appropriate instruction that he determined the sentence and they were not to consider it? That's the proper instruction. Then why isn't that a curative instruction? Well, the question is whether that can cure the prior statements by both the prosecutors. But we see this all the time where mistakes are made and judges come back and say, let me give you the instruction and this is what I want you to consider. And we assume that juries will follow their instructions. And the first was only a statement. It wasn't even an instruction. Well, it was a statement by the judge. I think that's as good as instruction. I think what's striking here, Your Honor, is the difference between the two trials. What is it? How do you go from nine to three for acquittal and an acquittal to two hours of deliberation and two? The only thing that seems different in here is they brought this up. And it seems to me that there's two cases I've cited I can tell you where. I thought that in the second trial that he was also impeached with his testimony at the first trial. No one's pointed to anything of any significance. What about did the three-strike evidence come in the first trial? I don't know, Your Honor. Well, that seems very important, doesn't it? I don't know the answer to that. As you know, we are under strict constraints at this point with regard to AEDPA. What are the Supreme Court cases you're relying on? Well, Your Honor, I think it's Donnelly v. Rogers didn't even get to the merits of this question, did it? It really ultimately decided a right to counsel issue. I'm sorry. Rogers really ultimately decided a right to counsel issue. It was the no presence of counsel at the time. So it doesn't seem to be on point. No, Your Honor. The case we're relying on is Donnelly v. Cristoforo. The fact that a statement by the prosecutor or the judge that renders a trial fundamentally unfair is a violation of due process. And the Court has found at least two instances where there's been an unreasonable application of Donnelly. One of them is Thomas v. Hubbard, 273, Fed 3rd, 1164. And the other one is Parle v. Runnels, P-A-R-L-E v. Runnels, 505, Fed 3rd, 922. Both those cases found that statements in different – found basically an unreasonable application of Donnelly. And that's what we're relying on is Donnelly, which this Court has recognized to be clearly established law, Federal law, Supreme Court law, for purposes of AEDPA. Well, let me ask you how – your response to this. McKenzie has not established that the judge – the district judge's statement had a substantial injurious effect or influence on the jury. We could – there's no establishment they didn't follow the jurors – the judges' instruction. Isn't that – that's what Brecht requires. And we have to find – because this is a State habeas, we've got to find that the ruling is inconsistent with the State Supreme Court case. Your Honor, Thomas v. Hubbard says that if you should find a violation of Donnelly, that by itself meets the Brecht thing – the Brecht standard. If you find that something was fundamentally unfair in the trial, that meets the Brecht standard per se. That's what the circuit has said on that. So it's not a separate question. You're over your time, but one last question. Could you point me to what there is in Donnelly v. Cristoforo that is relevant to your argument? Your Honor, it's the basic principle that if a statement by a court or by the prosecutor or other actions of that nature renders a trial fundamentally unfair – No, but it doesn't have anything to do with this question, this specific question about punishment. No, it's a general principle, and it's a general principle that you've applied in Thomas v. Hubbard and Parle v. Runnels. Does those have anything to do with the question of exposing the punishment possibilities? Did those cases deal with that? No, they didn't. Okay. No, these were just cases where you found an unreasonable application to clearly establish law under Donnelly. All right. Thank you very much. Thank you. Mr. Bachman. Good morning. May it please the Court. John Bachman, State Attorney General's Office, on behalf of Appellee. Yes, correct. There is no United States Supreme Court precedent that prohibits the jury learning about potential sentences. The appellant here is trying to shoehorn the general, that specific provision into the general language of Donnelly, and there is no support that I am aware of. So if a State were to, and this may be, but if the State were to sort of change the basic presuppositions that most of our criminal system is, works under and to specifically put to the jury the actual sentence in every case, that would be okay? Well, there's no – Well, that would not lead to a habeas. Let's put it that way. Yeah. There's no Supreme Court authority that prohibits, you know, the juries from learning about the sentence. You know, whether that would be found to, you know, so infect the trial that the jury's discharge of its duty was likely affected, you know, that would be, I think, a different question. But there's just no – there's no prohibition. But not on habeas.  There's no prohibition. On the harmless breck issue – Just because I'm curious. Is there any State law? Do you know? I didn't write the brief in the State appellate court. So – but I do remember seeing there's similar general language about it. But what its basis is, you know, it's – I'm not – I'm not familiar with it one way or the other. Okay. I did not – I did not brief it in the State court. And on that issue, in the State court, the petitioner or appellant here raises the issue that – that we failed to address the prosecutorial misconduct issue. The State appellate court did. The district court did. And we have. Well, that issue wasn't raised in the appellate court. It wasn't raised in the habeas petition. And it wasn't – it's not raised in the certificate of appealability. The sole issue is the trial court statements. So there's – there's good reason why that is not contained within that – within that analysis. On the harmless issue, there is no voir dire, at least in the record I have, to determine whether the three strikes is mentioned or in voir dire. Yes, there is. I read it. Is there from the first trial? Of the first trial. Yeah. I don't believe there's voir dire from the first trial. Yeah. The voir dire from the second trial is submitted. I wasn't even talking about voir dire in the first trial. I was talking about at the trial. Well, I mean, I gather that it did come up at the trial here. In the first trial? No, in this trial. In this trial, yes. At the trial. At the trial. At the trial. And, you know, extensively mentioned, but, you know, we – Pelley would point out that throughout the rest, you know, I've noted spots where it's mentioned. It's just when the prosecutor mentions it and the defense counsel mentions it, they just simply mention it's a third – it's a third strike case. And it's mentioned in the same context that the defense attorney did. And I would note, too, that the defense attorney, when she starts her voir dire, she says, this is a – this is a third – the accusation is my client committed petty theft. Anything of that nature and the fact that it's a three strikes contest. So the defense attorney was pretty clearly trying for some jury nullification here. And the court and the – The question is, would that make you think he was more likely to be guilty? Right. Right. And that – that's the contention about what her concern was. Right. And because she knew it was going to come up at the – in the substance of the trial. And did it come up in the substance of the trial? He – he testifies at trial. He testifies at trial, and he is – Were his prior convictions raised in an effort to impeach him? Well, he was – one difference between the two trials is the cross-examination of him was five pages in the first trial. And in the second trial, it was 45 pages. So, I mean, I think one – one difference in the – in the trial verdicts. And I recall it was 8-4, but counsel might be right, it might have been 9-3. But – So there was a much more detailed – I'm sorry, much more detailed – My understanding is that the supposition was that what was going to happen was that he was going – it was going to come out that he tried to cut a deal. He said, well, I – essentially, I kind of admitted it to the – but tried to cut a deal with the arresting officers, and that the explanation for this was going to be that he had a third strike and that he was trying to avoid it, even if he wasn't guilty. Now, did that happen? Did that scenario evolve? I seem to believe – I – my recollection is that Deputy Perlis, P-E-R-L-I-S, I believe he did testify that that Petitioner told him that, that he was going to – it was a strike, a third strike for him, and he wanted to work a deal. So I do believe the deputy did – my recollection is the deputy testified. The fact that it wouldn't necessarily come out in the trial was correct. It did come out, and that her reason for – That's my recollection, that the deputy did say that during the trial. What's your understanding of how Donnelly applies in this case? Well, again, I think the appellant is trying to shoehorn the specific proposition that a jury can't learn – shouldn't learn about punishment into the more general, you know, proposition from the cases that the trial court and counsel should not engage in. And so I don't think Donnelly applies in that specific context at all. The problem is there just is no Supreme Court precedent that there's a constitutional problem with that issue. Okay.   I don't think Donnelly applies in that specific context at all. My point is that Donnelly is cut off because on the specific of whether or not the jury can know about the penalty, there's no Supreme Court case. Correct. So therefore, there's not an unreasonable application of Supreme Court cases to this State habeas case. Correct. Okay. I understand your argument. And so the only other last issue was on the harmless issue. There was some discussion about the burden, and it's whether it has substantial injurious effect. And there is the equal oppose language from, I think it's Frye and one of the other Supreme Court cases, where with the tie would go to the Petitioner. But, you know, I think the standard is this Court to – is for this Court to examine that, and I think pretty clearly it did not, given it was early, given all the discussion about it or the issue later on, that it did not have a substantial injurious effect. And I would point out that on the trial issue, that the cross-examination of Petitioner was much more thorough and much more exhaustive in the second trial. With that, we'll submit it unless there's any more questions. I have one more question. Isn't it fair to say that Donnelly also goes to the point that if the problem of the conviction coming in is so difficult for that case that there's a due process violation, that you would overcome the Donnelly objection that you made? Is that correct? I think any conduct by the trial court or the prosecutor that would render it, you know, fundamentally unfair, that would inhibit the jury's discharge of its duties, would raise a due process issue. Okay. It's just that there's no precedent that mentioning penalty is such a problem. Well, now, counsel's indicated that, in sight of the case that I wasn't familiar with, I'm sorry, that in this case that there's an automatic violation of Donnelly. The Thomas Hubbard case from the Ninth Circuit? Yes. Yeah. How do you respond to that? Well. Was Thomas about punishment? No. Thomas Hubbard was. Yeah. And so there they held the, it was a prosecutor misconduct. The prosecutor commented that the co-defendant pled guilty, and the prosecutor also made another comment, oh, that he thought that the petitioner was guilty. And so the question there was whether the, you know, that conduct by the prosecutor so infected the trial that it was a denial of due process. And I believe it was the cumulative effect of the various errors that the Court found there may have violated due process. So if that was openness, how would you argue there was not a violation of due process in this case? Well, one is it's not, it doesn't rise to the level that it so, you know, infected the trial that it affected the jury's discharge of its duties. You know, the jury was properly instructed. It was corrected, you know, as you mentioned during the, my opponent's presentation, there was just circumstances that corrected the mentioning of it by the trial. And I think that's the ultimate conclusion in Donnelly itself, right? I mean, that the instructions were sufficiently corrected. Yeah, I believe that's correct, yes. Okay. And I think I actually messed up. I may have done the mention, when I was mentioning Roberts, there was actually a cumulative effect from Donnelly. So I might have confused the two there. All right. I'm sorry if I have done that. Once I look, I will figure out if I have or not. But, yeah, I may have done that. At least it wasn't on purpose, and we all know you violated due process, right? There you go. Thank you. Your Honor, could I have one minute to address a couple of other things? Okay. Can I have one extra minute? Yes, you may. I want to just address a couple of things that came up. First of all, the first trial was 9-3 for acquittal. You've mentioned that. I know, but there was a question whether it's 8-4 or not. Secondly, as to other States, the only States that allow punishment to come up before the jury is when the jury has a role in the sentencing. Right. When they don't, then the law is clear that it cannot come in. And then the third thing is this question of the district attorney's comments as opposed to the comments of the court. And I would point out that those were addressed as a factual thing in the court of appeal opinion, State court of appeal. They were rather bound up together. It's a little hard to pull them apart. I'm sorry, Your Honor. They were rather bound up together. I think they were bound up together. And I think that you can consider them as a constitutional error in themselves. If not, they aggravated the error of the judge. Well, they precipitated it. They actually precipitated the judge's statement. They may have actually precipitated it. Because he – first the prosecutor said something and then the judge eventually agreed with him. And went further, so. Okay. Thank you very much, both of you, for your argument. The case of McKenzie v. Yates is submitted. We will go on to United States v. Brown. May it please the Court. My name is Daniel Drake. I'm a lawyer from Phoenix, Arizona. And I represent Gerald Brown here this morning.
judges: Wallace, Berzon, Bybee